**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

MOLLIE R. LERNER,

      **Plaintiff,**

          **v.**                    **Civil No.** 25-1546 (FAB)

BELA LLC d/b/a THE PERCH HOTEL,
*et als.*,

      **Defendants.**

**OPINION AND ORDER**

BESOSA, Senior District Judge.

    Before the Court is defendant Universal Insurance Company ("Universal")'s motion to dismiss the complaint. (Docket No. 8.) For the following reasons, Universal's motion to dismiss is **DENIED**.

**I.    Background**

    According to the allegations in the complaint, on October 12, 2024, plaintiff Mollie Lerner ("Lerner"), a resident of North Carolina visiting Puerto Rico, went to the Perch Hotel (the "Hotel")[1] to rent a bicycle. (Docket No. 1 at p. 3.) The Hotel rents bicycles to both guests and non-guests; Lerner was not staying at the hotel but at a nearby Airbnb. Id. at pp. 1; 3-4. Lerner was riding the rented bicycle back to her Airbnb to pick up water and sunscreen when she encountered a steep hill. Id. at

---

[1] The Hotel is owned and operated by a company called Bela LLC, which is the defendant in this case. See Docket No. 1 at p. 2.

p. 4.  As she rode down the hill, she picked up speed, but when
she tried to apply the brakes, the bike did not slow down.  <u>Id.</u>
She swerved into the road, fell over the bicycle's handlebars, and
was run over by a truck that was driving up the hill.  <u>Id.</u>  She
sustained serious injuries.  <u>Id.</u> at pp. 4-5.

Lerner sued the Hotel, alleging that her accident was caused
by its negligence in maintaining the rental bicycle.  <u>Id.</u> at
pp. 6-8.  She also sued Universal, the Hotel's insurance provider.
<u>Id.</u> at pp. 2, 8.  The Hotel's insurance policy with Universal
provides commercial property and commercial general liability
("CGL") insurance.  <u>See</u> Docket No. 8-1.  Lerner claims that the
policy obliges Universal to indemnify the Hotel for any liability
related to her claims.  <u>See</u> Docket No. 1 at p. 2.

Universal asks the Court to be dismissed as a defendant,
claiming that Lerner's accident does not trigger its duties
pursuant to the Hotel's insurance policy.  (Docket No. 8.)
Universal's main argument is that the policy does not provide
coverage for liability related to the Hotel's bicycle rentals
because it only covers risks arising out of hotel and restaurant
operations.  <u>Id.</u> at pp. 6-8.  Lerner disagrees, arguing that the
Hotel's bicycle rental fits within its hotel operations.  (Docket
No. 12 at pp. 4-6.)  In the alternative, Lerner argues that the
policy's duty to defend is broader than its duty to indemnify, and

that at this stage in the proceedings, Universal1's motion to dismiss should be denied. Id. at pp. 6-7.

## II. Legal Standard

Pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)"), a defendant may move to dismiss an action for failure to state a claim upon which relief can be granted. See Fed. R. Civ. P. 12(b)(6).  To survive a Rule 12(b)(6) motion, a complaint must contain sufficient factual matter "to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  A court must decide whether the complaint alleges facts which "raise a right to relief above the speculative level." Id. at 555.  In doing so, a court is "obligated to view the facts of the complaint in the light most favorable to the plaintiffs, and to resolve any ambiguities in their favor." Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 17 (1st Cir. 2011).

"When a complaint's factual allegations are expressly linked to — and admittedly dependent upon — a document (the authenticity of which is not challenged), that document effectively merges into the pleadings and the trial court can review it in deciding a motion to dismiss under Rule 12(b)(6)." Sterngold Dental, LLC v. HDI Global Ins. Co., 929 F.3d 1, 6 (1st Cir. 2019) (citing Beddall v. State St. Bank & Tr. Co., 137 F.3d 12, 17 (1st Cir. 1998))

(alterations omitted).  With respect to Lerner's claims against
Universal, the insurance contract is such a document.  See Docket
No. 8-1.

## III. Discussion

This case arises in diversity jurisdiction and the parties
agree that Puerto Rico law supplies the substantive rules of
decision.  See Docket No. 1 at p. 8; Docket No. 8 at p. 2; Erie
R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938).  "This includes rules
relating to interpretation of an insurance policy."  Sterngold
Dental, 929 F.3d at 6 (alterations omitted).

"Pursuant to Puerto Rico law, the Insurance Code of Puerto
Rico controls the interpretation of insurance contracts."  Lorenzo
v. Perfect Cleaning Servs., Civil No. 15-1301 (JAG), 2016 U.S.
Dist. LEXIS 200313, at *6 (D.P.R. Dec. 2, 2016) (García-Gregory,
J.); see P.R. Laws Ann. tit. 26, §§ 1101-1137.  The Puerto Rico
Insurance Code mandates that "[e]very insurance contract shall be
construed according to the entirety of its terms and conditions as
set forth in the policy, and as amplified, extended, or modified
by any lawful rider, endorsement, or application attached to and
made a part of the policy."  P.R. Laws Ann. tit. 26, § 1125.
"[T]he Puerto Rico Supreme Court has [] established that since
most of the insurance contracts sold in Puerto Rico are modeled
after contracts drafted in the United States, both federal and

state law principles are useful and persuasive." <u>Fajardo Shopping</u>
<u>Ctr. of P.R., Inc. v. Sun Alliance Ins. Co.</u>, 167 F.3d 1, 7 (1st
Cir. 1999) (citing <u>Quiñones López v. Esposa Jane Doe</u>, 141
D.P.R. 139, 157-58 (1996)).

"[L]anguage used in [insurance contracts] must ordinarily be
construed within its common and usual meaning, not paying much
attention to grammatical rigour, but to the general use and popular
meaning of the idioms." <u>W Holding Co. v. AIG Ins. Co.</u>, Civil
No. 11-2271 (GAG), 2014 U.S. Dist. LEXIS 94005, at *19 (D.P.R.
Jul. 9, 2014) (Gelpí, J.) (quoting <u>Guerrido García v. Univ. Cent.</u>
<u>de Bayamón</u>, 143 D.P.R. 337, 348 (1997)). "[E]xclusionary clauses
must be restrictively construed so that the policy's purpose of
protecting the insured is met." <u>Id.</u> "Any ambiguity must be
resolved in favor of the insured." <u>Id.</u> "This rule, however, does
not bind the court to construe in favor of the insured a clause
that clearly and unambiguously favors the insurer in the
controversy in question." <u>Id.</u> at 19-20.

In a CGL policy like Universal's, "not all covered risks are
specifically enumerated, and insurance is provided for all
enumerated risks and for any other risk that has not been excluded,
recognized or specified." <u>Demario v. Lamadrid-Maldonado</u>, Civil
No. 16-2897, 2023 U.S. Dist. LEXIS 74392, at *27-28 (D.P.R.
Apr. 26, 2023) (Arias, C.J.) (citing <u>Albany Ins. Co. v. Compañía</u>

Civil No. 25-1546 (FAB)                                              6

de Desarrollo Comercial de P.R., 125 D.P.R. 421, 425 (1990)).  The
provision in question here, labelled Coverage A, provides coverage
for "those sums that the insured becomes legally obligated to pay
as damages because of 'bodily injury' or 'property damage' to which
this insurance applies."  See Docket No. 8-1 at p. 95.  Bodily
injury and property damage, both defined in the policy, must be
caused by an "occurrence" in the "coverage territory."  Id.  Each
of these terms is defined very broadly - for example, "bodily
injury" is defined as "bodily injury, sickness or disease sustained
by a person, including death resulting from any of these at any
time," and the "coverage territory" is the United States, Puerto
Rico, and Canada, along with other parts of the world in various
situations.  See id. at p. 107.  The policy then lists several
categories of risks excluded from coverage, such as expected or
intended injuries and assumption of liability through contract.
See id. at pp. 96-100.

     Pointing to the qualifier "to which this insurance applies,"
Universal argues that their obligations are limited by the business
description and classifications in the policy's declarations.  See
Docket No. 8 at p. 6 n. 2; Docket No. 8-1 at pp. 8-9 (describing
the Hotel as a hotel and restaurant).  Universal argues that
because renting bicycles is not a typical activity for a hotel or

Civil No. 25-1546 (FAB)                                                    7

restaurant, liability for Lerner's accident is not covered by the policy.  The Court disagrees.

First, Universal's interpretation of the policy is not supported by the text of the contract.  Universal would have the Court read the business description and classifications as limiting coverage to risks typical to hotels and restaurants. "[T]he general rule[, however,] is that 'business descriptions' do not limit coverage to the precise type of business described . . . [and] if the insurer wants to strictly limit coverage to activities within that description, it should explicitly say so."  Old Republic Ins. Co. v. Stratford Ins. Co., 777 F.3d 74, 88-89 (1st Cir. 2015) (Barron, J., concurring); see also Mount Vernon Fire Ins. Co. v. Belize N.Y., Inc., 277 F.3d 232, 239 (2d Cir. 2002) (rejecting insurance company's argument limiting coverage based on a business classification, noting that this "would enable an insurer to limit its policy coverage through classification listings without alerting the insured to the limitation.")  Here, the insurance contract never indicates that coverage is limited to activities falling within the scope of the business classifications.  The classifications are simply listed in the declarations without any reference to coverage.  Accordingly, the Court cannot infer that the parties intended coverage to be limited by these classifications.

Nor does the mere presence of the business classifications in the policy declarations create ambiguity about the scope of coverage.[2]  Had Universal wished to limit coverage based on the business classifications, this limitation would have been straightforward to draft by adding what is known as a "classification limitation endorsement."  See, e.g., Colony Nat'l Ins. Co. v. Hing Wah Chinese Rest., 546 F. Supp. 2d 202, 206-12 (E.D. Pa. 2008) (finding that the insurance contract's classification limitation endorsement, specifying that "coverage under this policy is specifically limited to those operations described in the declarations under 'Classification[,]'" limited coverage to restaurant activities only, excluding delivery service).  The absence of a classification limitation endorsement in Universal's policy indicates that the parties did not intend to limit coverage based on the classifications listed in the declaration.

There is a second explanation for what the business classifications are in the policy, which undercuts the inference that they are meant to limit coverage.  Business classifications are used to estimate the policyholder's risk profile when calculating its insurance premium.  See Cincinnati Ins. Co. v.

---

[2] Even if they did, ambiguities must be construed in favor of coverage.  See W Holding Co., U.S. Dist. LEXIS 94005 at *19 (quoting Guerrido García, 143 D.P.R. at 348) ("Any ambiguity must be resolved in favor of the insured.").

Wilkerson, 616 Fed. Appx. 813, 817 n. 3 (6th Cir. 2015). Subsequent changes in the policyholder's risk profile may be addressed through premium audits performed by the insurer. See Docket No. 8-1 at p. 106; Zurich Am. Ins. Co. v. UGS Priv. Sec., Inc., No. CV 22-1163-GW-Ex, 2023 WL 3565063, at *2 (C.D. Cal. Jan. 20, 2023) (outlining premium audit process). Following an audit, the insurer can modify the policyholder's premium to reflect any newly discovered risk exposure. Id. In other words, the contract contains a specified mechanism for addressing changes to the policyholder's risk profile that does not involve denying coverage for activities outside the scope of the business classifications.

Universal's proposed interpretation of the policy also would introduce substantial coverage uncertainty without notice to the policyholder. The business classifications do not purport to provide a detailed description of all the Hotel's operations. There is no list of "hotel activities" to which the Hotel can refer when considering the extent of its coverage. As this case demonstrates, assessing whether an activity falls within the scope of a business classification is not an exact science – whether renting bicycles should qualify as a "hotel activity" is not immediately obvious. Because the purpose of an insurance policy is "to provide protection to the insured," CH Props. v. First Am.

Civil No. 25-1546 (FAB)                                                    10

<u>Title Ins. Co.</u>, 43 F. Supp. 3d 83, 97 (D.P.R. 2014) (Besosa, J.) (citing <u>Quiñones López</u>, 141 D.P.R. at 155), the Court will not construe the contract in a manner that transfers substantial coverage uncertainty to the insured Hotel without explicit language placing the Hotel on notice.

Accordingly, the Court rejects Universal's argument that it has no coverage obligation for Lerner's accident under the Hotel's CGL policy. Dismissing Universal as a defendant is therefore unwarranted.

## IV. Conclusion

For the above reasons, Universal's motion to dismiss is **DENIED**. (Docket No. 8.)

**IT IS SO ORDERED.**

San Juan, Puerto Rico, January 21, 2026.

<u>s/ Francisco A. Besosa</u>
FRANCISCO A. BESOSA
SENIOR UNITED STATES DISTRICT JUDGE